**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**
**READING DIVISION**

| | |
|---|---|
| IN RE: | Case No. 20-12166-pmm |
| Yoan Henriquez | Chapter 11 |
| Debtor | |

## STIPULATION AUTHORIZING THE USE OF CASH COLLATERAL AND ADEQUATE PROTECTION

To alleviate the need for a motion under 11 U.S.C. §363, and for cause shown, the Parties, Yoan Henriquez ("Debtor") and Nationstar Mortgage LLC d/b/a Mr. Cooper ("Creditor") hereby stipulate to Debtor's use of Creditor's Cash Collateral with respect to the real property located at 426 Parkwynne Road, Lancaster, PA 17601 (the "Subject Property") as follows:

1. <u>Definition of Cash Collateral</u>. The term "**Cash Collateral**," as used in this Stipulation, is defined as cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, rents, or profits of property and the fees, charges, accounts or other payments for the use or occupancy of rooms and other public facilities in hotels, motels, or other lodging properties subject to a security interest as provided in 11 U.SC. §§ 363 and 552(b), whether existing before or after the commencement of a case under this title.

2. <u>Use of Cash Collateral and Granting of Replacement Lien</u>. Subject to the terms and conditions of this Stipulation, the Debtor is authorized to use the Cash Collateral derived from the Property. Further, Creditor is granted a post-petition replacement lien in the Cash Collateral to the same extent, and priority and validity as Creditor's pre-petition as to the Property.

3. <u>Term.</u> The Debtor's authority to use Cash Collateral shall terminate ("**Termination Event**") on the earlier of: (i) the effective date of any confirmed Chapter 11 plan of reorganization (ii) dismissal of this case; (iii) the Debtor's default and failure to cure the same with respect to any term, provision or condition of this Stipulation; or (iv) conversion of this case to one under Chapter 7 of the Bankruptcy Code.

4.	<u>Budget and Payment of Expenses</u>. From the Cash Collateral derived from the Property, commencing upon execution of this Stipulation, and continuing on the first day of each month thereafter until a Termination Event, Debtor shall reserve the amounts for the expenses listed below for the Property and timely pay said expenses when due:

| **Current Rental Income**: | $1,300.00 |
|---|---|
| **Monthly Expenses**: | |
| Payment to Creditor | ($465.26) |
| Escrow (Taxes & Insurance): | ($366.51) |
| Maintenance: | ($125.00) |
| Administrative Plan Expenses: | ($200.00) |
| **Total Monthly Expenses:** | **$1,156.77** |
| **Net Rental Income:** | **$143.23** |

Debtor agrees the net rents shall be held in reserve in Debtor's DIP account in accordance with paragraph 8 of this Stipulation to be used solely for the Property and no other purpose.

Debtor also agrees to provide Creditor with documentation substantiating the above referenced expenses upon reasonable written request, and Debtor further agrees to provide Creditor counsel with a copy of any written lease/rental agreements in effect for the Property, as well as provide Creditor's counsel with a copy of any renewals of said lease/rental agreements or new lease/rental agreements within 15 days of Creditor's written request for the same.

5.	<u>Adequate Protection Payments</u>. Debtor has agreed to pay Creditor the amount of $831.77 per month ($465.26 and $366.51 escrow for property taxes and homeowner's insurance) as adequate protection ("**AP Payment**") for Debtor's use of the Cash Collateral. The AP Payment shall commence immediately upon execution of this Stipulation and continue on the first day of each month thereafter until a Termination Event above.

6. <u>Property Taxes and Insurance</u>. Creditor agrees to timely pay any and all real property taxes and homeowner's insurance for the Subject Property when due since the AP Payment per paragraph 5 above includes a monthly allocation for the same.

7. <u>Variance</u>. Consistent with the conditions set forth in paragraph 4, no payment of any expense set forth in paragraph 4 above shall exceed the budgeted line item for said expenses by more than ten percent (10%) without the prior written consent of the Creditor. Notwithstanding the foregoing, Debtor shall be entitled to use up to $500.00 of the net rents for urgent repairs and/or maintenance of the Property without further Court order.

8. <u>Segregated Account; Use Limitation; Operating Reports</u>. Consistent with the conditions set forth in paragraph 4, Debtor will open and deposit all Cash Collateral from the Property into a segregated Cash Collateral account (the "**Deposited Funds**"). The Segregated Account shall be maintained in accordance with 11 U.S.C. § 363(c)(4). The Deposited Funds will not be available for use by the Debtor for personal expenses or any other property of the Debtor's estate, and only as outlined in this Stipulation. Debtor agrees to timely maintain his reporting requirements under FRBP 2015.

9. <u>No Waiver</u>. Nothing contained in this Stipulation or order thereon shall be deemed or construed to waive, reduce, or otherwise diminish the rights and claims of the Creditor against the Debtor, or of any rights, claims or defenses of the Debtor against Creditor. Creditor expressly reserves its right to bring a Motion for Relief from Stay on any grounds, oppose any valuation concerning the Property, object to Debtor's Chapter 11 Plan of Reorganization, and bring a Motion to Dismiss or Convert Debtor's case. Further, by executing this Stipulation Creditor is not agreeing to any type of modification of the Loan, nor with Debtor's proposed valuation of the Property, or any proposed interest rate for Debtor's Chapter 11 Plan, or any proposed Chapter 11 Plan. This Stipulation relates solely to the use of Cash Collateral and related rights and remedies. The acceptance by Creditor of a late or partial payment hereunder shall not act as a waiver of its right to proceed hereunder.

10. <u>Default:</u>

10.1    If the Debtor fails to fully perform any provision, term or condition of this Stipulation in a timely manner, the Debtor shall be in default under this Stipulation. In the event Debtor is in default under this Stipulation, Creditor shall provide written notice, via first-class mail to Debtor, and via electronic mail to Debtor's attorney of record indicating the nature of default. If Debtor fails to cure the default within the passage of thirty (30) calendar days from the date said written notice is placed in the mail, Creditor's consent to Debtor's use of Cash Collateral shall automatically terminate without further notice, order or proceeding of the Court. Upon any such default, the Debtor shall thereafter immediately sequester and account for all Cash Collateral produced by and/or derived from the Property. In the event the Debtor defaults under this Stipulation and Creditor forwards a default letter to Debtor, Debtor shall be required to tender all reasonable attorney's fees and costs for each default letter submitted, in addition to the default amount stated therein, in order to cure the default. Any notice of default that Creditor er provides Debtor pursuant to this Stipulation shall not be construed as a communication under the Fair Debt Collection Practices Act, 15 U.S.C. §1692.

10.2    If Debtor fails to cure the default within the 30-day period described above, then Creditor may file and serve a declaration under penalty of perjury specifying the default, together with a proposed order Terminating the Automatic Stay, which the Court may grant after the opportunity for notice or hearing.

11.    Modification. This Stipulation may not be altered, modified, or affected without the prior written consent of Creditor and Debtor. If any or all of the provisions of the Stipulation and related order thereon are hereafter modified, vacated, terminated, amended or stayed, Creditor consent to Debtor's use of Cash Collateral shall cease immediately thereupon.

12.    Signatures. This Stipulation may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. Signatures transmitted electronically, including by facsimile or email, may be deemed as originals.

By signing this Stipulation, Debtor's Counsel represents that Debtor is familiar with and understands the terms of the Stipulation and agrees to said terms regardless of whether Debtor has actually signed this Stipulation. Seen and agreed by the Parties on the date set forth below:

| | |
|---|---|
| /s/Daniel P. Jones | /s/Pauline Felice Gibble |
| Daniel P. Jones, Esq. | Pauline Felice Gibble, Esq. |
| Bar No: 321876 | Saxton and Stump |
| Stern & Eisenberg, PC | 280 Granite Run Drive |
| 1581 Main Street, Suite 200 | Suite 300 |
| Warrington, PA 18976 | Lancaster, PA 17601 |
| Phone: (215) 572-8111 | pfg@saxtonstump.com |
| djones@sterneisenberg.com | Attorney for Debtor(s) |
| Attorney for Creditor | |
| Date: October 5, 2021 | Date: October 5, 2021 |